# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BARRY D. DAVIDSON, a resident of and Domiciled in the State of Arkansas, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. CIV-18-836-SLP |
| JOAN MEG MORRIS CONINE, a/k/a MEG CONINE, et al., | ) ) ) ) |
| Defendants. | ) |

# **O R D E R**

Before the Court is Defendants' Rule 12(b)(6) Motion to Dismiss and Brief in Support or Alternatively, Rule 12(e) Motion for More Definite Statement [Doc. No. 13]. Plaintiffs have responded [Doc. No. 16] and Defendants have replied [Doc. No. 18].[1] The matter is fully briefed and ready for determination.

**I.**   **Introduction**

This action involves a dispute arising from a real estate project in Edmond, Oklahoma. Certain parties to the action formerly engaged in a real estate development business known as Davidson Conine Realty Advisors, Inc. and entered into a contractual agreement concerning the real estate project. Plaintiffs, Barry D. Davidson and Lou A. Davidson (Plaintiffs) seek to recover from certain Defendants money they claim is due to them as a consulting fee and for reimbursement of costs under the terms of the contractual agreement.

---

[1] Citations to the parties' submissions reference the Court's ECF pagination.

## II. Governing Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that they defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To evaluate the sufficiency of the allegations of the complaint under the "*Twombly/Iqbal* pleading standard" the court undertakes a "two-prong approach." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1195 (10th Cir. 2018) (citation omitted). Under the first prong, the court determines which allegations are not entitled to the assumption of truth and includes "legal conclusions" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. (citation omitted). The second prong requires the court to assume the truth of the well-pleaded factual allegations and determine whether they state a plausible claim for relief. *Id*. (citation omitted).

"Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Thus, "[w]hen a party presents matters outside of the pleadings for consideration . . . 'the court must either exclude the material or treat the motion as one for summary judgment.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (quoting *Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004)). Certain exceptions exist, and the court may

2

consider: (1) documents attached to the complaint as exhibits; (2) documents referenced in the complaint that are central to the plaintiff's claims if the parties do not dispute the documents' authenticity; and (3) matters of which the court may take judicial notice. *Gee*, 627 F.3d at 1186.

### III. Factual Allegations of the Complaint[2]

The claims at issue in this lawsuit arise out of a low-income housing development complex in Edmond, Oklahoma, known as the Creekside Project. The parties involved in the Creekside Project include Meg Conine; Kent Conine; Conine Realty Advisors, Inc., a Texas corporation (CRA); Barry Davidson; Lou Davidson; and Davidson Realty Advisors, LLC, a Texas limited liability company (DRA).[3]

The parties executed a Split-Up Agreement on November 27, 2002. Meg Conine and Kent Conine each signed the Agreement on behalf of "The Conine Group" and Meg Conine also signed the Agreement on behalf of CRA. The Agreement provided for an accounting and settlement of the assets and obligations related to the interests set forth above. At the time of execution, the parties believed the Creekside Project would cease to exist because it would not be able to obtain certain federal tax credits. Contrary to this belief, the Creekside Project ultimately did obtain the federal tax credits. As a result, the

---

[2] The Court views the factual allegations of the Complaint in the light most favorable to Plaintiffs as the non-moving parties. *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018).

[3] Prior to the execution of a Split-Up Agreement, the ownership interests in DRA, were as follows: Plaintiff Lou Davidson 50% and Defendant Meg Conine 50%. And, the ownership interests in CRA were as follows: Plaintiff Barry Davidson 49%; Plaintiff Lou Davidson 1% and Defendant Meg Conine 50%.

Creekside Project was completed and is currently operating in Edmond, Oklahoma as a residential housing complex.

Pursuant to an amendment to the Split-Up Agreement, Plaintiffs allege they are entitled to a consulting fee in the amount of $246,500.00 and to reimbursement of costs in the amount of $8,641.82. Also, pursuant to a Security Agreement signed contemporaneously with the Split-Up Agreement, Plaintiffs allege they have a security interest in the Creekside Project for the monies due and owing to them. The Security Agreement is signed by Kent Conine as the Debtor and Barry Davidson as the Secured Party.

Plaintiffs further allege that Defendant Creekside Village, L.P. (Creekside Village) is owned by Meg and Kent Conine. Plaintiffs allege that the Conines have transferred funds and assets formerly held by CRA to Creekside Village and that some or all of those funds and assets are owed to Plaintiffs under the terms of the Split-Up Agreeement and/or the Security Agreement.

In Count 1 of the Complaint, Plaintiffs allege a claim for breach of contract against Defendants Meg Conine, Kent Conine and CRA pursuant to the terms of the Split-Up Agreement and Security Agreement. Plaintiffs further allege Defendant Creekside Village, LP is an indispensable party to this action because it was created to hold assets of the Creekside Project as contemplated by Paragraph 1(c) of the Split-Up Agreement.

In Count 2 of the Complaint, Plaintiffs allege a claim for intentional interference with contractual relations. Plaintiffs claim that Defendants acted with the specific intent

to interfere with and disrupt the contractual relationship Plaintiffs had with separate defendants with the intent to defraud Plaintiffs.

Plaintiffs also seek declaratory relief. Specifically, Plaintiffs seeks a declaration that they have a lien against the Creekside Project real property. Plaintiffs further request the Court to declare the priority of any competing liens.

## IV. Discussion

### A. Choice of Law

A federal court sitting in diversity must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *In re ZAGG Inc. Shareholder Derivative Action*, 826 F.3d 1222, 1228 (10th Cir. 2016). In moving for dismissal, Defendants argue the breach of contract claim alleged in this action is governed by Texas law, applying Oklahoma's choice of law rules. Defendants cite, in part, the choice-of-law provisions in the contracts at issue which provide for Texas law to apply. Plaintiffs do not contest application of Texas law and the Court finds Texas law governs. *See Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1033-34 (Okla. 2006); *Cagle v. The James St. Grp.*, 400 F. App'x 348, 354-55 (10th Cir. 2010).

Defendants further argue "either Texas or Oklahoma law governs the tortious interference claim." Defs.' Mot. at 9. Defendants note that applying either Oklahoma or Texas law to the claim will "lead to the same result." *Id*. at 12. For the reasons set forth below, the Court agrees and, therefore, need not resolve the issue.

B.  **Dismissal Under Rule 12(b)(6)**

1.  **Breach of Contract**

Defendants first seek dismissal of Plaintiffs' breach of contract claim as to Defendant Creekside Village on grounds that it is not a party to the Split-Up Agreement or Security Agreement. Plaintiffs allege Creekside Village is an "indispensable party" and a "proper Defendant to this action," *see* Compl., ¶ 22, by virtue of the fact that Creekside Village holds assets subject to the terms and condition of the Split-Up Agreement and Security Agreement. Plaintiffs further allege that Creekside Village is a party to the Split-Up Agreement because it was created to hold assets of the Creekside Project as contemplated by ¶ 1(c) of the Split-Up Agreement, as amended.

In response to the Defendants' Motion, Plaintiffs wholly fail to address whether Creekside Village is a party to the contract and, therefore, whether Plaintiffs can bring a breach of contract claim against it. Thus, the Court finds Plaintiffs have confessed the motion with respect to this issue. Moreover, the Court's independent review of the Complaint and its attachments fails to demonstrate that Creekside Village is a party to either the Split-Up Agreement or the Security Agreement. Necessarily, therefore, Plaintiffs fails to state a breach of contract claim against Creekside Village.

Second, Defendants seek dismissal of any breach of contract claim against Defendants Meg Conine and Kent Conine. Defendants contend the only alleged breach is a failure to pay reimbursement costs and the consulting fee and that only CRA is obligated to pay any contractual sums due. Defendants excerpt only the most limited portion of the language of the Split-Up Agreement in support of their dismissal motion which states that

"*CRA* shall deliver to the Davidsons" the "reimbursement for costs" and the "consulting fee." *See* Split-Up Agreement [Doc. No. 1-1] at 4, ¶ 1(c)(i) and (ii) (emphasis added). But those same provisions of the Agreement further reference duties of Meg Conine, individually. *See, e.g., id.*, ¶ 1(c)(ii) ("Meg Conine and CRA agree to use their diligent efforts to cause all development fees for the Creekside Project to be funded in the same manner as was described for the Hillview Project . . . ."); *see also* Amendment [Doc. No. 1-3] (containing same language).

Moreover, the Amendment recites that "per the Split-Up Agreement . . . the Parties agreed to a certain payment of developer fees *from the Conine Group*. . . ." *See* Amendment (emphasis added). In response to Defendants' motion, Plaintiffs recite other provisions of the Split-Up Agreement setting forth obligations of the individual defendants. *See* Pls.' Resp. at 4-5. Additionally, the Split-Up Agreement recites that "the Conines and CRA are sometimes collectively referred to herein as the 'Conine Group.'" *See* Split-Up Agreement. And, as stated above, Meg Conine and Kent Conine individually signed the Split-Up Agreement on behalf of "The Conine Group." They also individually signed the Amendment on behalf of The Conine Group. And Meg Conine separately signed the Split-Up Agreement on behalf of CRA. The Court finds, therefore, at this early stage in the proceedings that the Complaint plausibly states a claim for breach of contract against Meg Conine and Kent Conine.

    **2.**    **Intentional Interference with Contractual Relations**

Plaintiffs bring a claim for intentional interference with contractual relations. The allegations in support of the claim are less than clear. Plaintiffs allege that Defendants

"intentionally and purposefully cross-represented, controlled, and manipulated as a single entity which were wrongly utilized by, among, and through Defendants Meg and Kent Conine to the detriment of the Defendants, Barry D. Davidson and Lou A. Davidson." Compl., ¶ 35. Plaintiffs further allege: "Defendants, Meg Conine, Kent Conine, Conine Realty Advisor, Inc., and Creekside Village, LP wrongful actions were done with the specific intent to interfere with and disrupt the contractual relations Plaintiffs had with the separate defendants, and that Defendants, one and/or all, actions were not privileged, but were done with the specific intent to defraud the Plaintiffs . . . " *Id.*, ¶ 36.

In the "statement of facts" section Plaintiffs further allege that "during a period of time subsequent to the commencement of this action . . . the Conines actively and with intentional purpose undertook to hide, conceal and mislead the Plaintiffs about the business operation of the Creekside Project, and purposefully and with intent to deceive, kept Plaintiffs from knowing about or becoming aware of business activities taking place regarding the Creekside Project; which would generate obligations that would cause funds to be due and owing the Plaintiffs." *Id.*, ¶ 23.

A court need not accept "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Rather, "to state a claim in federal court, a complaint must explain what each defendant did to [the plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Plaintiffs allegations in support of their claim for intentional interference with contractual relations are wholly conclusory and insufficient to withstand dismissal.[4] Although Plaintiffs repeatedly assert "intentional" and "purposeful" conduct engaged in by one or more Defendants for fraudulent or deceitful reasons, no specific conduct is identified by any particular Defendant. And in responding to Defendants' motion, Plaintiffs simply reiterate in conclusory fashion that "the individuals and entities that make up the Conine Group were intentionally and purposefully cross-represented, controlled, and manipulated as a single entity to the detriment of Plaintiffs." Pls.' Resp. at 6. Because the Court finds the allegations fail to state any plausible claim for relief, Plaintiffs' claim is dismissed.[5]

3. **Declaratory Relief**

Next, Defendants seek dismissal of Plaintiffs' request for declaratory relief. Defendants argue the Complaint "cites no authority upon which the Court could declare the Plaintiffs have a lien on the Creekside Project." Defs.' Mot. at 19. Defendants argue neither the Split-Up Agreement nor the Security Agreement grant any security interest but rather those agreements merely define certain collateral. In response, Plaintiffs argue the

---

[4] Plaintiffs state the tort claim is an alternative theory of liability in the event either of the individual Defendants is "not personally obligated" to make payments to Plaintiffs under the contracts at issue. Pls.' Resp. at 6-7. But Defendants argue that, as parties to the contracts at issue, no tortious interference claim can be brought against "the Conine Defendants." Defs.' Mot. at 17. Defendants' motion presents somewhat inconsistent positions as to whether the individual defendants are parties to the contract. Given the wholly conclusory nature of the allegations in support of the claim, the Court dismisses the claim on that basis and need not further address the issue of whether the tort claim can be brought against the individual defendants.

[5] Plaintiffs have not asked for leave to amend or otherwise provided additional facts upon which to base their claim for intentional interference with contractual relations.

9

express terms of the Security Agreement not only define the collateral but further expressly create a "valid and continuing lien" on the same. *See* Pls.' Resp. at 8 (citing Security Agreement, ¶ 3.02).

The Court finds the allegations of the Complaint, construed with the provisions of the Split-Up Agreement and Security Agreement, are sufficient to support Plaintiffs' request for declaratory relief. Defendants ignore the provisions of the Security Agreement cited by Plaintiff which expressly create a security interest in collateral held by Creekside Village. Those provisions are referenced in the Complaint, *see, e.g.*, *id.*, ¶ 18 and, therefore, it is proper for the Court to consider them. The Court finds the allegations plausibly state a claim for declaratory relief and Defendants' motion to dismiss is denied.

    **4.    Defendant Alpha-Barnes Real Estate Services, LLC, a Texas Limited Liability Company (Alpha)**

Defendants also move for dismissal of Defendant Alpha on grounds no claims are alleged against Alpha. Plaintiffs have not responded to this argument and, therefore, have confessed that dismissal is proper. Moreover, the Court's independent review of the Complaint establishes no claims for relief stated against Alpha. Therefore, the Court grants Defendants' Motion as to Alpha.

**V.    <u>Conclusion</u>**

For the reasons set forth, Defendants' Motion is granted as to Plaintiffs' breach of contract claim against Defendant Creekside Village, L.P. and Plaintiffs' claim for intentional interference with contractual relations. Defendants' motion is also granted as to Plaintiffs' claims against Defendant Alpha-Barnes Real Estate Services, LLC.

Defendants' Motion is denied in all other respects including Defendants' request for relief under Rule 12(e).[6]

IT IS THEREFORE ORDERED that Defendants' Rule 12(b)(6) Motion to Dismiss and Brief in Support or Alternatively, Rule 12(e) Motion for More Definite Statement [Doc. No. 13] is GRANTED in part and DENIED in part as set forth.

IT IS SO ORDERED this 18th day of June, 2019.

_____
SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

---

[6] Defendants have requested relief pursuant to Rule 12(e) in a most general fashion and the Court finds no grounds for relief have been adequately addressed or are otherwise warranted.